**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **VERONICA RICHARDSON,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:18-00468-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| *Commissioner of Social Security,*[1] | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Veronica Richardson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Mar. 17, 2020)). This change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. §

consideration of the parties' briefs (Docs. 16, 17, 18, 25) and those portions of the administrative record (Doc. 12) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.     *Procedural Background*

Richardson filed the subject applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on September 9, 2015. After they were initially denied, Richardson requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held on May 2, 2017; on October 31, 2017, the ALJ issued an unfavorable decision on Richardson's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* Doc. 12, PageID.52-62).

The Commissioner's decision on Richardson's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on September 12, 2018. (*See* Doc. 12, PageID.46-50). Richardson subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a

---

1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 20, 23). With the Court's consent, the parties jointly waived the opportunity for oral argument. (Docs. 21, 24).

hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here...reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.

---

be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

The review must take into account and evaluate the record as a whole.").[5]

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper

[5] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').");  *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo*

the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[6]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.     *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Richardson met the applicable insured status requirements through December 31, 2019, and that she had not engaged in substantial gainful activity since the alleged disability onset date of August 13,

2015.[8]  (Doc. 12, PageID.57).  At Step Two, the ALJ determined that Richardson

had the severe impairment of "status post both hip replacements."  (Doc. 12,

PageID.57).  At Step Three, the ALJ found that Richardson did not have an

impairment or combination of impairments that met or equaled the severity of a

specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404,

Subpt. P, App. 1.  (Doc. 12, PageID.58).

   At Step Four,[9] the ALJ determined that Richardson had the residual

_____

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates
disability on or before the last date for which she were insured.  42 U.S.C. §
423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month
where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–
03 (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[9] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine
> whether the claimant: (1) can return to her past relevant work under
> the fourth step; and (2) can adjust to other work under the fifth
> step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. §
> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past
> relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant
> work, the ALJ must determine the claimant's RFC using all relevant
> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That

functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),[10] specifically, occasionally lift and/or carry up to twenty (20) pounds and ten (10) pounds frequently; stand and/or walk six (6) hours with a sit/stand option; push/pull as she could lift and/or carry; climb ramps occasionally; climb stairs less than occasionally; no climbing ladders, ropes or scaffolds; stooping and bending at the waist is limited to less than occasional but more than rarely; no kneeling; no crouching; no crawling; and avoidance of concentrated exposure to hazardous machinery and heights." (Doc. 12, PageID.58-60).

Based on the RFC and the testimony of a vocational expert,[11] the ALJ determined that Richardson was unable to perform any past relevant work. (Doc. 12, PageID.60-61). At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of other jobs

---

is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[10] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[11] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

in the national economy that Richardson could perform given her RFC, age, education, and work experience. (Doc. 12, PageID.61-62). Thus, the ALJ found that Richardson was not under a disability as defined by Social Security Act during the relevant adjudicatory period. (Doc. 12, PageID.62).

## IV. *Analysis*

### A. **Expert Opinion on Medical Equivalence**

Richardson first argues that the ALJ reversibly erred by not obtaining a medical expert's opinion on the issue of whether her impairments medically equaled a Listing at Step Three. The undersigned finds no reversible error.

In making this argument, Richardson relies on 20 C.F.R. §§ 404.1526(c) and 416.926(c), and Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (July 2, 1996).[12] Sections 404.1526(c) and 416.926(c) both state as follows:

---

[12] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security…" *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

> This is not to say that [federal courts] are bound by agency rulings that interpret an agency's regulations. We are not. B. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981). But the Rulings are binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security Administration."). We require the agency to follow its regulations "where failure to enforce such regulations would adversely affect 'substantive rights of individuals.' " First Ala. Bank, N.A. v. United States, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993) (quoting Morton v. Ruiz, 415 U.S. 199, 232, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974) ); see also Romano-Murphy v. C.I.R., 816 F.3d 707, 720 (11th Cir. 2016); Gonzalez v. Reno, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations."). This is the case even where … "the internal procedures are more rigorous than

When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)). We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner. (See § 404.1616.)

20 C.F.R. §§ 404.1526(c), 416.926(c). The Commissioner argues that those "regulations merely explain that, when evaluating medical equivalence, 'we consider all evidence in your case record about your impairment,' including a medical or psychological consultant's opinion if one is in the record[,] and that "[t]he regulations do not, as Plaintiff asserts, state that the ALJ *must* obtain a medical consultant opinion if one is not in the record." (Doc. 18, PageID.788). The undersigned finds that, at the very least, §§ 404.1526(c) and 416.926(c) are ambiguous as to whether the provision "[w]e also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner" requires the record to contain such an opinion, or merely requires the Commissioner to consider such opinions if they are properly submitted into the administrative record.

SSR 96-6p resolved this ambiguity in favor of the former position, stating in relevant part:

---

otherwise would be required." <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam).

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (footnote omitted).

The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.

When an administrative law judge or the Appeals Council finds that an individual s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

SSR 96-6p, 1996 WL 374180, at *3. Richardson asserts that the administrative record here is devoid of any opinion by a medical consultant on the issue of medical equivalency. She argues the ALJ could not rely on the State agency's disability determinations on her applications as the required opinion evidence because those forms were prepared by a Single Decision Maker (SDM), a designation that

"connotes no medical credentials." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (per curiam) (unpublished) (citing 20 C.F.R. § 404.906(a), (b)(2)).

The Commissioner does not argue that there is a valid opinion on medical equivalency in the record. However, the Commissioner does point out, correctly, that SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017, before the ALJ's decision on Richardson's applications was issued on October 31, 2017. *See* SSR 17-2p, 2017 WL 3928306, at *1 (with an effective date of March 27, 2017, "[t]his Social Security Ruling (SSR) rescinds and replaces SSR 96-6p"). Moreover, contrary to SSR 96-6p, SSR 17-2p states: "If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4. Undeterred, Richardson argues that SSR 96-6p should still apply to her applications because they were filed before the effective date of SSR 17-2p.

Given its effective date, SSR 17-2p appears to have been issued as part of the SSA's substantial revisions of its rules regarding the evaluation of medical evidence, which were published on January 18, 2017, and became effective March 27, 2017. HALLEX I-5-3-30(I) (SSA), 2017 WL 1362776, at *1. "[M]any of the most significant changes for evaluating evidence w[ere to] apply only in claims filed on or

after March 27, 2017[,]" and the SSA offered the following guidance for determining

if a rule was meant to apply to applications filed on or after the effective date:

> The rules applicable in cases filed before March 27, 2017, but not applicable in cases filed on or after that date, include the following or similar language: "For claims filed before March 27, 2017, the rules in this section apply." For simplicity, these rules are referred to as the "prior rules." The rules applicable in cases filed on or after March 27, 2017, but not applicable in cases filed before that date, include the following or similar language: "For claims filed on or after March 27, 2017, the rules in this section apply." For simplicity, these rules are referred to as the "current rules."

HALLEX I-5-3-30(IV), 2017 WL 1362776, at *2. However, not all of the revised

rules are dependent on a claim's filing date, as the SSA intended that "some of the

revised rules apply in all claims…" *Id.*

SSR 17-2p does not contain the above-noted language, or indeed any

language at all, indicating that it was meant to apply only to claims filed on or after

its effective date, and Richardson has cited no authority indicating otherwise.[13]

Unless their language indicates otherwise, changes to administrative rules

generally apply prospectively; therefore, the ALJ was bound to follow SSR 17-2p,

the operative ruling in effect at the time of her decision, rather than SSR 96-6p.[14]

---

[13] Richardson misconstrues HALLEX I-5-3-30(IV)(F). While that provision does state that, "[f]or claim(s) filed before March 27, 2017, adjudicators must use the prior rules throughout the entire appeals process[,]" the heading of subsection IV(F) makes clear that "prior rules" was being used as that term was defined in the preamble of section IV–"[t]he rules applicable in cases filed before March 27, 2017, but not applicable in cases filed on or after that date" (i.e., those that had been specifically designated to apply only to claims filed before March 27, 2017).

[14] *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) ("[T]he U.S. Supreme Court has held that administrative rules

Finally, Richardson asserts that, even if SSR 17-2p applies to her applications instead of SSR 96-6p, SSR 17-2p is inconsistent with *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660 (11th Cir. 1987) (per curiam), which predates SSR 96-6p and cites a prior version of §§ 404.1526(c) and 416.926(c) in twice stating that, "when deciding medical equivalence, the Secretary must consider the medical opinion of one or more designated physicians on an advisory basis." 847 F.2d at 662-63 (citing 20 C.F.R. § 416.926(b)). While this statement from *Wilkinson* is certainly consistent with SSR 96-6p's interpretation of §§ 404.1526(c) and

---

generally are not applied retroactively. <u>See</u> <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208, 109 S. Ct. 468, 471, 102 L. Ed. 2d 493 (1988) ('Retroactivity is not favored in the law.... and administrative rules will not be construed to have retroactive effect unless their language requires this result.'). SSR 16-3p contains no language suggesting, much less requiring, retroactive application. Indeed, SSR 16-3p explicitly states that it became effective on March 28, 2016, which 'actually points the other way.' <u>See</u> <u>Sierra Club v. Tenn. Valley Auth.</u>, 430 F.3d 1337, 1351 (11th Cir. 2005) (declining to apply state agency rule retroactively where the rule expressly provided an effective date, explaining that '[t]here is no point in specifying an effective date if a provision is to be applied retroactively'). Thus, SSR 16-3p applies only prospectively and does not provide a basis for remand."); *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018), *as revised* (Oct. 16, 2018) ("Until recently, the Social Security Administration directed ALJs to discount RFC forms that were inconsistent with the underlying factual record. SSR 96-6p, 1996 WL 374180. This ruling has since been rescinded and replaced, but was in effect at the time of the ALJ's decision in this case. See SSR 17-2p, 2017 WL 3928306."); *Rice v. Barnhart*, 384 F.3d 363, 369 n.4 (7th Cir. 2004) ("Listing 1.05(C) was rescinded effective February 19, 2002. *Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria*, 66 Fed.Reg. 58,010 (Nov. 19, 2001). Because Listing 1.05(C) was the listing in effect at the time of the ALJ's decision, it is the only listing we need now consider."); *Petersen v. Berryhill*, 737 F. App'x 329, 332 n.1 (9th Cir. 2018) ("Because the prior ruling was in effect at the time of the ALJ's decision, the ALJ was bound to follow it."); *Baker v. Berryhill*, No. 5:17-CV-00921-AKK, 2018 WL 4635741, at *5 n.3 (N.D. Ala. Sept. 27, 2018) ("SSR 17-2p does not apply retroactively, and when reviewing a final decision in a claim for DIB, the court reviews the decision using the rules that were in effect at the time of the decision.").

416.926(c), the undersigned nevertheless concludes that it does not fatally conflict with SSR 17-2p because it is dicta. "This is crucial because, whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced. Statements in an opinion that are not fitted to the facts, or that extend further than the facts of that case, or that are not necessary to the decision of an appeal given the facts and circumstances of the case, are dicta." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) (citations and quotations omitted). "And dicta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

The above-mentioned statement from *Wilkinson* was not necessary to the resolution of the issues in that case in either instance in which it was written. The statement first appears in *Wilkinson* as part of a general recitation of Step Three procedures, *see* 847 F.2d at 662; the Eleventh Circuit has already held that another statement from the same paragraph in *Wilkinson* "was dicta, provided merely for background." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1285 (11th Cir. 2004). Moreover, "[t]he only issue in *Wilkinson* was whether the medical evidence offered by the applicant was sufficient to demonstrate that the applicant suffered from particular limitations specified in the Listings." *Id.* In pressing this issue, the plaintiff in *Wilkinson* argued that "the ALJ improperly relied on a 'paper' medical advisor to make this determination[;]" the Eleventh Circuit disagreed, holding that "the ALJ could rely on the opinion of" the medical advisor and repeating the observation that "[w]hen deciding medical equivalence, the Secretary

must consider the medical opinion of one or more designated physicians on an advisory basis." 847 F.2d at 663. Given that the specific issue in *Wilkinson* was whether the ALJ <u>could</u> rely on the medical advisor's opinion in deciding medical equivalence (with the plaintiff expressly arguing he could not), any statement purporting to read §§ 404.1526(c) and 416.926 to <u>require</u> the Commissioner to <u>always</u> obtain a physician's opinion when deciding medical equivalence was not necessary to resolution of that issue. This conclusion is bolstered by the fact that the undersigned has been unable to locate any subsequent Eleventh Circuit decision that cites *Wilkinson* for anything resembling that proposition.[15]

Accordingly, the undersigned concludes that SSR 17-2p applied to Richardson's applications at the time of the ALJ's decision, and therefore the ALJ was not required to obtain an opinion from a medical expert before making a determination on the issue of medical equivalence at Step Three.

## B.    Obesity

"[O]besity is not a listed impairment, but the ALJ is required to consider obesity in the analysis of a claimant's overall medical condition. Social Security Regulation 02–1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant from doing past relevant work and other work that

---

[15] *Sanders v. Colvin*, No. 2:13CV719-SRW, 2014 WL 4389874 (M.D. Ala. Sept. 5, 2014), which relied in passing on *Wilkinson*'s dicta, is not persuasive because it was decided before SSR 17-2p's effective date, when SSR 96-6p, which did require an opinion on medical equivalence, was still unquestionably in effect.

exists in significant numbers in the national economy." *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (per curiam) (unpublished) (citation and quotation omitted). "The SSA has acknowledged that '[o]besity can cause limitation of function ... in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." 67 Fed.Reg. 57859 (Sept. 12, 2002). Accordingly, under SSR 02–1P, an RFC assessment should take account 'of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.' *Id.*" *Solomon v. Comm'r, Soc. Sec. Admin.*, 532 F. App'x 837, 840–41 (11th Cir. 2013) (per curiam) (unpublished).

Richardson next argues that the ALJ failed to evaluate the effects of her obesity in accordance with SSR 02-1p. Relatedly, she also argues that the ALJ's failure to consider her obesity means the RFC is not supported by substantial evidence. While true that the ALJ did not specifically mention obesity in her decision, the undersigned agrees with the Commissioner that any failure to do so was harmless. The ALJ's decision reflects an adequate consideration of the record evidence, and the record as a whole does not indicate that Richardson's obesity warranted any further limitations than what the ALJ already assigned.[16]

---

[16] Any error in failing to deem obesity a severe impairment at Step Two was harmless because the ALJ found that Richardson had at least one severe impairment, which is all that is required to satisfy Step Two. *See, e.g.*, *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (per curiam) (unpublished) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step

At Step Three, the ALJ specifically found that Richardson did not meet Listing 1.03 "because she returned to effective ambulation within 12 months of onset" (Doc. 12, PageID.58), thus indicating that Richardson's obesity did not affect her ability to ambulate to a disabling degree. At Step Four, the ALJ discussed medical records documenting an overall improvement in Richardson's ability following her hip replacement surgeries on August 14 and November 14, 2015. (*See id.*, PageID.59-60). Records from the latest post-surgery follow-up visit, on February 7, 2017, noted that Richardson complained of some bilateral lower extremity swell, but that otherwise she was "doing well[,] had no pain in her hips and got around pretty well[, and] only had some issues with putting her socks on." (*Id.*, PageID.60). Richardson also had "good active range of motion of both hips with flexion and internal and external rotation of the hips[,] was neurovascularly intact[, had] satisfactory alignment of both hip prostheses[, with] no periprosthetic fracture." (*Id.*). Richardson has pointed to nothing indicating that her obesity caused her to be any more limited than what the ALJ already determined from the evidence of record. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (per curiam) ("Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in

---

two requires. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (applying the harmless error doctrine to social security cases); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment ... whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two) (emphasis added). []Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." (footnote omitted)).

his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." (citations omitted)).

## C.    Pain

Finally, Richardson asserts that the ALJ did not adequately account for her complaints of pain, but this argument fails for largely the same reasons as her obesity argument, as the objective medical evidence of record reflects that her pain significantly improved following her hip surgeries, with the February 7, 2017 follow-up visit noting "no pain in her hips" and "good active range of motion of both hips with flexion and internal and external rotation of the hips[,]" with only "some bilateral lower extremity swelling..." (Doc. 12, PageID.762). The ALJ also found that Richardson's subjective complaints regarding the intensity, persistence, and limiting effects of her pain were "not entirely consistent with the medical evidence and other evidence in the record" and thus did not support imposing any additional limitations (*see id.*, PageID.59), and a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing

court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

In sum, Richardson has failed to show reversible error by the ALJ. Accordingly, the Court finds that the Commissioner's final decision denying Richardson's applications is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Richardson's September 9, 2015 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 17th day of March 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**